IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN ANDREW REED, IV, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No._____ |
| | § | |
| L3HARRIS TECHNOLOGIES, INC., and | § | |
| L3HARRIS TECHNOLOGIES | § | |
| INTEGRATED SYSTEMS L.P., | § | |
| | § | |
| *Defendants*. | § | |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff John Andrew Reed, IV files this his Original Complaint against L3Harris Technologies, Inc. ("L3Harris") and L3Harris Technologies Integrated Systems L.P. ("L3Harris IS") (collectively referred to as "Defendants"), and for causes of action respectfully shows the Court as follows:

I.

## **Introduction**

1.01    Plaintiff would show the Court that Defendants fired him from his job following reports of fraudulent conduct by his employer in connection with the handling of classified documents pursuant to Department of Defense contracts. Plaintiff brings this claim for wrongful termination of a whistleblower under the Defense Contractor Whistleblower Protection Act (the "DCWPA"), 10 U.S.C. §4701.

II.

**Parties**

2.01    Plaintiff John Andrew Reed, IV is a citizen and resident of the State of Texas, and may be contacted through his attorneys of record, John H. Crouch, IV, Glast Phillips Murray Zopolsky, PC, and W.D. Masterson, W.D. Masterson Law, PLLC.

2.02    Defendant L3Harris Technologies, Inc. ("L3Harris" or "Defendant") is a Delaware corporation, which has its principal place of business at 1025 W Nasa Blvd., MS A-12A, Melbourne, FL 32919.  Its registered agent for service of process is Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

2.03    Defendant L3Harris Technologies Integrated Systems L.P. is a Delaware Limited Partnership, with principal offices located at 600 Third Avenue, New York, NY 10016. Its registered agent for service of process in the State of Texas is Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218. According to the Texas Secretary of State, it maintains an assumed name certificate for L3Harris Technologies and L3HarrisTechnologies Integrated Systems. This entity is believed to be a wholly owned subsidiary of L3Harris, and the W-2 employer of Plaintiff, whose paychecks come from "L3Harris Tech Integrated System."

III.

**Jurisdiction and Venue**

3.01    Pursuant to 28 U.S.C. § 1331, jurisdiction is appropriate in the United States District Court for the Northern District of Texas, as this action involves a question of the

application of federal law, namely the Defense Contractor Whistleblower Protection Act (the "DCWPA"), 10 U.S.C. §4701.  The Court will also have supplemental jurisdiction over any state law claims that may be subsequently added pursuant to Plaintiff's pending EEOC Charge.

3.02    Venue for all causes of action stated herein lies in the Northern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. § 1391 since L3Harris terminated Plaintiff's employment within this district. Plaintiff was employed by L3Harris at its facility in Greenville, Texas, which is located in Hunt County.

## IV.

## **Background Facts**

4.01    L3Harris Technologies, Inc. is an American technology company, defense contractor, and information technology services provider that produces products for command and control systems, wireless equipment, tactical radios, avionics and electronic systems, night vision equipment, intelligence, surveillance and reconnaissance (C3ISR) systems and products, ocean systems, instrumentation, navigation products, training devices and services, and both terrestrial/spaceborne antennas for use in the government, defense, and commercial sectors.  The company was formed from the merger of L3 Technologies and Harris Corporation on June 29, 2019, which made it the sixth-largest defense contractor in the United States. It is believed to own and/or control Defendant L3Harris Technologies Integrated Systems L.P., Plaintiff's paycheck employer as part of an integrated enterprise.

4.02    Plaintiff was employed by Defendant L3Harris as Senior Manager of Industrial Security and designated as a Contractor Special Security Officer by Wright Patterson Air Force Base Special Security Office. His job duties generally included accounting for documents and materials designated "secret" or higher by the DoD.

4.03    As Plaintiff began to prepare for the Defense Counterintelligence and Security Agency (the "DCSA") inspection scheduled for August of 2023, Plaintiff was made aware that there were many records in the eSentry database recording the existence and location of classified documents and media that were not accountable to any person, approximately 1,800 items. Plaintiff was told that many of these records were believed to have resulted from a transfer of data from the legacy classified item accountability system, WASP, to the current system, eSentry. This data transfer occurred about 2.5 years prior to the events in question. Plaintiff was told there were more unaccounted for items in the past, and some items had been found or confirmed to be erroneous records of items that never existed. Many of the approximately 1,800 unaccounted for items had no record of being handled or accounted for since the record of their existence was moved from WASP to eSentry. The dominant belief was that most of the unaccounted for eSentry items did not really exist, and were erroneously created during the WASP to eSentry data transfer.

4.04    While Plaintiff believes this is probable in the majority of cases, having not been inspected in several years, it was initially understood by all that it would be wholly negligent to delete all 1,800 or so items without proper mitigation.

4.05    In early or mid-June 2023 Plaintiff gained access to the last remaining computer with WASP records on it. This allowed Plaintiff to see who last handled the unaccounted-for items in WASP, if anybody. Approximately 33 classified items, from

Secret to Top Secret/SCI were last handled by Jamison Forer, the current Security Director, on March 6, 2017, when he worked in the SCIF in a lower position. His contact with the missing items was categorized as an "Audit." This would make him the first person an investigator would talk to in an effort to determine what happened to the missing items. Jamison Forer was above Plaintiff in the chain of command, so as a courtesy Plaintiff informed him that the newly discovered WASP records indicated that he was the last person to verify the existence of these 33 classified items. Plaintiff emailed him the report containing his name as the last person to audit the 33 items. This email was sent on 6/14/2023.

4.06    A few days later, around June 21, 2023, Walter Rounsoville, who is the FSO reporting directly to Jamison and Plaintiff's immediate supervisor, made a point of having an "off the record" conversation with Plaintiff and Billy Hayes in which he directed them to lower the standard of evidence for deciding which of the unaccounted for classified items in eSentry were erroneous. Previously Plaintiff had only authorized closing out a missing item when proof, as in absolute proof, was found that the item was destroyed, delivered to a customer, or that the record did not represent a real classified item (i.e., the WASP having 2 eSentry items recording the existence of a single item so the duplicate could be deleted). The new standing order which Plaintiff was told privately and instructed not to disseminate to others, was essentially to "Look around. If you don't find the classified item where the record says it is, assume it is an error and delete it." Plaintiff did not follow this order. Plaintiff maintained his previous standard. To keep himself out of trouble for not following Rounsoville's order, Plaintiff's practice was to refer lists of classified items that met the new, lower standard for deletion but not Plaintiff's standard to Rounsoville for his action.

4.07    It should be noted that Rounsoville did not have a background in SCIF Security.  Plaintiff did not believe he was aware of the seriousness of the order he communicated to Hayes and Plaintiff, which was believed to be contrary to DoD regulations on the handling of secret materials, and would render false any assertions by Defendant as to compliance with the handling of secret material.  During the conversation with Plaintiff, Rounsoville, and Hayes, Plaintiff expressed his discomfort with the new practice Rounsoville was requiring them to do, and expressed his belief the instructions were illegal and contrary to DoD regulations.

4.08    Plaintiff does not believe that at any time this inventory discrepancy, which included numerous lost classified items and even entire hard drives, was ever reported to Wright Patterson Air Force Base SSO in accordance with the requirements listed in DODM 5105.21, the Indoc agreements all employees sign when being granted access to SCI, and the SIO signed SOP which gives employees 24 hours to report an issue such as the above. Employees were 2.5 to 3 years delinquent on the 24 hour deadline, and had a non-fully functional inventory system for that time period while performing biannual accountability exercises.  Most everyone working in the SCIF was aware of the nonfunctioning inventory, and knew that they could remove classified information from the SCIF with minimal risk of being caught unless the issue was reported.  The practice which became an unwritten policy was such that a nefarious person, up to and including espionage efforts, would be covered up by the loose records deletion practice implemented by Rounsoville. Thus, the proposed practice would constitute gross negligence in the performance of L3Harris' DoD contracts.

4.09    Plaintiff had been in SCIF Security management for 11 years, 10 with the government as an SSO, most of that 10 years as the designated SSO at a 4-star command, and 1 year with L3Harris as a CSSO.  Plaintiff can state with absolute certainty no SSO would tolerate one of their SCIFs inventory management system being left in a non-functional state for years, then a practice implemented that allows for potentially missing classified information to effectively be covered up by SCIF Security.  Plaintiff can state with absolute certainty no SSO would tolerate someone in SCIF Security not reporting a major discrepancy involving as much as 1 potentially missing item, let along 1,800, and not having this issue reported to him/her for years while the problem persists.

4.10    Defendant's management knew about this problem for years, knew it fell short of contract reporting requirements, and willfully chose, every day they came to work for 2.5 or more years, to not work to resolve the problem, and to willfully neglect the persons in SCIF Security Management to act towards resolving this problem.

4.11    If Wright Patterson SSO and SIO had not been told of this situation, they should have be made aware immediately.  The contractors in Security Management who had been on-scene knew about this for years had proven themselves unwilling to properly resolve this situation, and willing to participate in a coverup of hundreds of potentially missing classified items.

4.12    On September 9, 2023 Plaintiff tried to tell Walter Rounsoville that Plaintiff felt the lowering of standards was not appropriate, referencing the conversation between himself, Plaintiff and Hayes.  Rounsoville told Plaintiff that he never lowered the standards. His statement was absolutely false.  Plaintiff doubted that internal complaints to  L3Harris corporate HR or ethics would be sufficient because Plaintiff had seen other issues reported

which were fully substantiated, one of which was witnessed by Plaintiff, and no action was taken.

4.13   Plaintiff felt obligated to report the matter internally at first, and later to the Inspector General of the Department of Defense, as Plaintiff received confirmation that this situation was never reported to the appropriate office on September 9th.

4.14   Plaintiff made three protected disclosures which led to Plaintiff's termination in reprisal as follows:

1.   The First Disclosure

August 24, 2023.

Disclosure made to:   Kathaleen Reeves

Physical Security Officer, Alt. SSO

AFLCMC 21 IS/INS, WPAFB SSO

DSN:  713-3457, COMM: (937)713-3457

A draft of this disclosure was provided to the Inspector General.

2.   The Second Disclosure

Approximately September 12, 2023 (2nd disclosure)

Disclosure made to:

Chad A. Wolfe, ECoP

Manager, Global Trade Compliance, Empowered Official

L3HARRIS CINCINNATI ELECTRONICS CORPORATION

SUBSIDIARY OF L3HARRIS TECHNOLIGIES, INC.

T +1 513 204 7351 M +1 513 282 8412

L3Harris.com/chad.wolfe@L3Harris.com

7500 Innovation Way / Mason, OH 45040 / USA

(Ethics Advisor assigned to Plaintiff's department)

The report sent to Wright Patterson Air Force Base Special Security Office was forwarded to Chad Wolfe as an email attachment. It is unknown if the company took any action based on this report.

3.     The Third Disclosure

Approximately November 2023.

Disclosure made to:    James Richardson

                            Territory Security Manager.

Plaintiff is unsure of his exact title.  He was three levels above Plaintiff in his chain of command. Plaintiff made this disclosure on the phone to James Richardson.  The content of the disclosure was the same as the report Plaintiff provided to Wright Patterson Air Force Base Special Security Office.  Plaintiff informed James Richardson that he had already informed Wright Patterson Air Force Base Special Security Office.  This disclosure was also discussed in a subsequent email from Plaintiff to James Richardson.

4.15     The investigator was John Nichols, Facility Security Officer. It should be noted that John Nichols and Plaintiff both reported to Jamison Forer.  Jamison Forer was potentially involved with the decision to falsify the classified inventory management system in order to cover up a large volume of potentially lost classified information.  Our

inventory system showed that Jamison Forer was the last person to verify the presence of approximately 32 missing classified items, including hard drives which could have contained up to a total of 100+ gigabytes of classified information.  Shortly after Jamison Forer was made aware that he would be questioned about these items, his subordinate, Walter Rounsoville, directed the lowering of the standard of evidence to justify falsifying the classified material inventory records.

4.16    When Plaintiff's chain of command became aware of his report to Wright Patterson Air Force Base Special Security Office, all support for Plaintiff was abruptly withdrawn.  Plaintiff was subject to numerous incidences of unfair treatment, including but not limited to, being required to attend a meeting arranged for the sole purpose of publicly berating him in front of a subordinate and several peers.  Plaintiff was subjected to excessive scrutiny, well beyond that of his peers.  He was prohibited from being allowed to formally counsel a subordinate who became insubordinate, yet he was held responsible for that insubordinate employee's actions.  Plaintiff is a retired military officer with PTSD. The retaliation resulted in Plaintiff's PTSD becoming over 130% worse on a permanent basis, as assessed by the Department of Veterans Affairs.  Plaintiff informed L3Harris HR of this on January 17, 2024, days before the retaliation became more severe as discussed below.  Also, Plaintiff's request for a reasonable accommodation relating to his PTSD was ignored by L3Harris in violation of the law.

4.17    The primary retaliation against Plaintiff was when he was suspended without being given a reason on the evening of January 19, 2024, followed by his termination without being given a reason on April 2, 2024.  When Plaintiff was fired via phone call with HR employee Keith Shaw, no cause was implied, much less stated.

4.18     Plaintiff believes his security clearance has also been negatively impacted as part of the retaliation he has suffered.  His FOIA request to DSCA revealed that Rounsoville made a false report to that agency, apparently in an attempt to discredit Plaintiff in injure his ability to work in the field.

4.19     It is clear that Plaintiff's termination was because of his report of wrongdoing because there is a strong correlation in time between the change in how he was treated and L3Harris becoming aware of the report he filed.  Also, before he was suspended Plaintiff reviewed his employee file in its entirety in Jennifer Gann's (HR employee) office.  This was done approximately early January 2024.  Plaintiff's file contained no negative information of any kind relating to his performance, conduct, or anything else.  There is no remaining explanation for the treatment received by Plaintiff.

4.20     As far as Plaintiff can tell the company became aware of Plaintiff's disclosure to Wright Patterson Air Force Base Special Security Office no later than when he disclosed the same to Chad Wolfe.  He had previously expressed strong reservations about the records falsification practice to Walter Rounsoville, and disclosed his concerns to several other employees who were not in his chain of command, such as Billy Hayes and Jay Hollis.

4.21     L3Harris in Greenville has a reputation for targeting whistleblowers that has been reinforced by Plaintiff's firing, showing an intentional patter of coverups and retaliation.

4.22     It should be noted that L3Harris hired Plaintiff specifically to serve as a Contractor Special Security Officer, and asked the US Air Force to designate Plaintiff as such immediately upon his arrival.  The DOD describes the duties and responsibilities of a

Contractor Special Security Officer in DODM 5105.21 Volute 1.  The disclosure to Wright Patterson Air Force Base Special Security Office was required by the duties and responsibilities of a Contractor Special Security Officer as outlined in DODM 5105.21, , paragraph 9.  DODM 5105.21, paragraph 8 prohibits interference in the carrying out of the duties of a Contractor Special Security Officer by the employer.  Plaintiff experienced significant interference with the duties for which L3Harris hired him and directed him to do by L3Harris in the form of retaliation.

V.

Count One

**PLAINTIFF'S WHISTLEBLOWER REPRISAL CLAIM**

5.01    The foregoing paragraphs in this Complaint are incorporated in this count by reference as fully as if set forth at length herein.

5.02    As provided in 10 USCA §4701(a) Plaintiff was discharged, demoted, and/or otherwise discriminated against in reprisal for disclosing to a person or bodies described in 4701(a)(2) information that the employee believed was evidence of the following:

(A)    Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a Department contract (including the competition for or negotiation of a contract) or grant.

5.03    Plaintiff timely requested the Inspector General to investigate Plaintiff's whistleblower reprisal claim as provided in 10 USCA §4701(b), and upon completion of

such investigation, submit a report of the findings to a party enumerated in the statutes including the Head of the Defense Department. An extension of 180 days was requested by the Inspector General's office, and granted by Plaintiff. No decision has been forthcoming.

5.04    Plaintiff further requested in his complaint to the Inspector General that the head of the Defense Department "take affirmative action to abate the reprisal, by awarding Plaintiff compensatory damages as further demanded in said statute, including back pay, employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken." Since no report was timely submitted by the Inspector General, no action upon the report has been taken by the Secretary of Defense. *See*, 10 U.S.C. § 4701(c)(1).

5.05    Given the failure of the Secretary of Defense to take action in the alotted time, Plaintiff is entitled to bring this Complaint *de novo* under the statute. *See*, 10 U.S.C. § 4701(c)(2).  It now falls to this Court to "take affirmative action to abate the reprisal, by awarding Plaintiff compensatory damages as further demanded in said statute, including back pay, employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken."

5.06    In addition, as further provided in said statute, Plaintiff seeks to recover an amount equal to the aggregate of all costs and expenses, including attorney's fees and expert witness fees that were reasonably incurred by Plaintiff in bringing this Complaint.

5.07    Finally, Plaintiff seeks such other and further and general relief as Plaintiff may be entitled to whether in law or in equity.

VI.

**Jury Demand**

6.01   Plaintiff requests a jury trial in this cause.


WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiff have and recover the following relief against Defendant:

(1)   Judgment for actual damages in the amount of past lost earnings and benefits, damages to past and future earnings capacity, and past and future damage to reputation;

(2)   Damages for past and future mental anguish;

(3)   An order reinstating Plaintiff as an employee of the Defendant in a similar position with similar pay and benefits to that from which he was wrongfully terminated, or, in the alternative, future pay in an amount to be determined by the Court;

(4)   Prejudgment and post-judgment interest at the maximum legal rate;

(5)   Attorney's fees;

(6)   Expert's fees;

(7)   All costs of court; and

(8)   Such other and further relief to which Plaintiff may be justly entitled.


Dated:  June 22, 2026.

Respectfully submitted,

**Glast Phillips Murray Zopolsky, PC**


By:  /s/ John H. Crouch, IV

  JOHN H. CROUCH, IV
  State Bar No. 00783906
  jcrouch@gpmz-law.com

14901 Quorum Drive, Suite 300
Dallas, TX  75254-6735
(972) 419-8300 - Telephone
(972) 419-8329 - Fax


**W.D. Masterson Law, PLLC**
W.D. Masterson
State Bar No.:  13184000
wdmasterson333@gmail.com
2720 Rosedale Avenue
Dallas, Texas 75205
(214)592-3999

**ATTORNEYS FOR PLAINTIFF**
**JOHN ANDREW REED, IV**